USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11-28-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MEI LING LIN,

                         Plaintiff,

          -v-

CITY OF NEW YORK, et al.,

                        Defendants.

------------------------------------------------------------X

14 Civ. 9994 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a plaintiff's objections to monetary sanctions entered against her and her counsel for unprofessional conduct in connection with a settlement conference before a magistrate judge. For the reasons that follow, the Court, while joining in the condemnation of this conduct, vacates the sanctions.

## I.   Background[1]

###     A.   Proceedings Before the Magistrate Judge

On December 18, 2014, plaintiff Mei Ling Lin filed a complaint in this Court, bringing claims under 42 U.S.C. § 1983 and state law for, *inter alia*, false arrest, malicious prosecution, excessive force, and unreasonable search. Dkt. 1. These claims stem from a March 6, 2014 incident in which Lin, then six months pregnant, was arrested by several police officers while working at Fu Xing Chinese Restaurant, a Bronx restaurant owned by her husband. *Id.* at ¶¶ 18–

---

[1] The following summary is drawn from the transcript of the January 13, 2016 settlement conference, Dkt. 50 ("Tr."), from the January 27, 2016 and February 9, 2016 Declarations of William Richard Stoltz, Dkts. 49-3 and 58-1, from the January 27, 2016 and February 9, 2016 Declarations of Jiawen Ariel Yan, Dkts. 49-4 and 58-2, and from the January 29, 2016 letter submitted by defense counsel, Dkt. 53.

46. Lin alleges that the officers arrested her without probable cause and used excessive force. *See id.* at ¶¶ 52–111. The basis of the arrest was Lin's failure, when asked, to provide identification documents; Lin explains that she did not comply because, understanding little English, she did not understand the request. *Id.* at ¶¶ 18–46. Lin alleges that, during the arrest, she was frisked and fell, injuring her back and buttocks, and was then shoved into a police van, only to be released about 20 minutes later after the police found her identification documents in her handbag and left her with a summons. *Id.* After the arrest, Lin alleges, she did not feel well, called 911 complaining of vomiting and stomach pain, was taken to a hospital by ambulance, and was later released after receiving treatment. *Id.* at ¶¶ 42–43. Her baby was subsequently born healthy. *See* Dkt. 69, Ex. E, at 34–35.

On August 4, 2014, the Court referred the case to Magistrate Judge Andrew J. Peck for the limited purpose of assisting the parties to reach a settlement. Dkt. 23. A settlement conference was originally scheduled for December 22, 2015, Dkt. 31; after two rounds of rescheduling, it was rescheduled to January 13, 2016, Dkt. 45. The order setting the settlement conference required each party to submit, by December 15, 2015, a confidential memorandum detailing the factual and legal background of the case, the history of settlement discussions, and the party's settlement proposal or range. *See* Dkt. 31. On December 15, 2015, Lin, through counsel, submitted a three-page memorandum, seemingly stating that her settlement demand was for a minimum of $60,000, while also stating that her settlement range was between $60,000 and $100,000. Tr. 2.[2]

---

[2] As Judge Peck noted, the upper end of Lin's settlement range, while appearing to be $100,000, was not fully clear. Lin recited the upper end-figure as "1" followed by five zeroes, seeming to indicate $100,000, but "based on the fact that there was a comma in there," Judge Peck stated, Lin "might have meant between [$]60,000 and a million." *Id.*

2

On January 13, 2016, Judge Peck attempted to hold the settlement conference, which was scheduled for 2:30 p.m. Lin was late. She did not arrive until around 3 p.m. *Id.* at 3. While waiting for Lin, her lawyer, William Richard Stoltz., Esq., of the Wang Law Office, PLLC, informed Judge Peck and counsel for defendants, Corporation Counsel of the City of New York, that Lin's non-negotiable settlement demand was in fact $600,000 and not $60,000, as Lin had previously represented to the Court. *Id.* Stoltz had not previously notified either Judge Peck or defense counsel that Lin's settlement demand had grown 10-fold, or indeed, communicated in any way that there had been any change from her December 15, 2015 demand of $60,000. *Id.* at 2–3. (Defense counsel's pre-conference letter had notified the Court that, at a prior mediation, Lin had demanded $60,000 but apparently had meant to demand $100,000. *Id.*) When Lin arrived, she confirmed that she would not settle for less than $600,000. *Id.* at 3.

Judge Peck then pronounced the settlement conference, in light of Lin's new demand, "a total waste of the Court's and defense counsel's time." *Id.* at 2. He turned to consider sanctions. Recounting the facts, he noted, first, that Lin had been late, which wasted the time of defense counsel, the Court, and its staff. *Id.* at 3. Second, he noted, Stoltz had never advised the Court "that the demand was no longer 60 or 100,000 but was 600,000." *Id.* That, Judge Peck stated, was "an insane demand" and "off the reservation." *Id.* at 4. As he explained, even if there were liability, Lin was in custody for 20 minutes and "never even got to the precinct," but instead went no further than the police car outside the restaurant. *Id.* Judge Peck added: "No jury would ever return a $600,000 award in this case," and, even if the jury did, he stated, it would not be immune from reversal. *Id.*[3] And he added, while "I can't force her to be realistic in

---

[3] Judge Peck noted that Stoltz had not recited any basis in his settlement memo for "anything other than garden-variety damages here," *id.*, or recited any analysis explaining or justifying any settlement demand, even the $60,000 one recited there, *id.* at 4–5.

settlement[,] I can expect that counsel will follow the Court's orders in advising the Court of what [the party's] settlement positions is." *Id.* Had Stoltz reported Lin's new demand in advance of the conference, Judge Peck noted, a phone call could have been held that resulted in cancelling the conference or revisiting the demand. *Id.* The result was that the Court's time preparing for, awaiting, and holding the conference had been "a total waste." *Id.*

Judge Peck therefore stated that, subject to hearing from Stoltz why there should be no sanction, he intended to impose a $250 sanction jointly on and severally on Lin and Stoltz, payable to the Corporation Counsel, for Lin's untimeliness; and a $1,000 sanction, payable to the Clerk of Court, for "[n]ot adequately following the Court's instructions and advising the Court of the party's [settlement] position." *Id.* at 5. Judge Peck emphasized that the sanction was not "for taking an utterly ridiculous settlement position," although he noted that Lin and Stoltz may have been "foolish to waste the only other settlement conference you're ever getting from the Court in this case, but that's fine. That's your prerogative." *Id.*

Given the opportunity to respond, Stoltz explained that he had learned of his client's new settlement demand several days before, and represented that he had called Judge Peck's clerk, in light of the rescheduling of the conference, to inquire if "we need to submit a new memo." *Id.* at 6. The clerk, Stoltz said, had said that a new memo was not necessary. *Id.* at 6, 8. Stoltz did not, however, represent that he had told the clerk that Lin had a new and higher settlement demand, and, questioned by Judge Peck, Stoltz admitted that he had not notified the clerk that the settlement demand "had changed by a power of 10." *Id.* at 6. Stoltz also admitted that he had not notified defense counsel of the higher demand; Stoltz explained that because defense counsel had rejected an earlier $60,000 demand, "the idea of telling him it's now 600,000" was futile because "they weren't going to go there." *Id.* Judge Peck countered that notifying defense

4

counsel might have led defense counsel to notify the Court that there was no purpose served by the conference. *Id.* at 7.

As to Lin's lateness, Stoltz represented that Lin was late because she got lost en route to the courthouse. He stated that he had informed her of the 2:30 p.m. conference. *Id.* at 8–9.

Following this exchange, Judge Peck imposed both the $250 and $1,000 sanctions. He explained that Stoltz's failure to report Lin's new settlement demand, coupled with her lateness, had wasted well over an hour of the Court's time. *Id.* at 9. He notified Stoltz of the right to appeal the sanctions to the district court, or alternatively, to pay those sums voluntarily so as to avoid the repercussions of a sanctions finding on an attorney's record. *Id.* Stoltz responded that he intended to appeal. *Id.* at 9–10.

### B.    Plaintiff's Objections to the Sanctions

On January 27, 2016, Lin and Stoltz filed objections to the sanctions and declarations in support. Dkt. 49. On January 29, 2016, defense counsel filed a letter asking that the sanctions order be affirmed and raised the concern that Stoltz's affidavit and that of his paralegal, who had been present at the settlement conference, may have been based on improper recordings of the conference, as the affidavits appeared to quote verbatim and at length from non-transcribed portions of the settlement conference. Dkt. 53. On February 5, 2016, the Court issued an order directing plaintiff's counsel to indicate the basis on which those quotations were based, so as to enable the Court to determine whether the conference had been surreptitiously tape-recorded. Dkt. 56. On February 9, 2016, Stoltz and his paralegal submitted declarations responding to this concern. *See* Dkt. 58. On February 10, 2016, the Court issued an order accepting their

representations that there had been no tape recording and that the lengthy quotations of remarks at the conference were not verbatim but were instead "in sum and substance." Dkt. 59.[4]

## II. Discussion

### A. Standard of Review and Source of Authority to Impose Sanctions

A district court reviews a magistrate judge's order on a non-dispositive pretrial matter for whether the order "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). An order is "clearly erroneous" only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, caselaw or rules of procedure." *S.E.C. v. Thrasher*, 92 Civ. 6987 (JFK), 1995 WL 456402, at *12 (S.D.N.Y. Aug. 2, 1995).

As to dispositive matters, a magistrate judge may issue a report and recommendation to the district court. *See* 28 U.S.C. § 636(b)(1)(B); *see also Gomez v. United States*, 490 U.S. 858, 873–74 (1989). These include motions for "injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A); *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008). Reports and recommendations are reviewed for clear error, save that, where a party submits specific objections to the report and recommendation, the district court reviews *de novo*

---

[4] Since the briefing on the sanctions, defendants have moved for summary judgment, Dkt. 67, and the parties have briefed that motion. *See* Dkts. 67–70, 73–80. The Court's decision resolving that motion will issue shortly in a separate opinion.

the magistrate judge's determination on issues specifically objected to. *See Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (citation omitted); Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).

The scope of district court review of monetary sanctions ordered by a magistrate judge depends on the type of sanctions imposed. Consistent with a magistrate judge's broad authority over discovery, a magistrate judge may impose sanctions under Federal Rule of Civil Procedure 37 for non-compliance with discovery orders; such sanctions are considered non-dispositive of the underlying lawsuit and reviewable for clear error. *Thomas E. Hoar*, 900 F.2d at 525. But as to sanctions imposed under Federal Rule of Civil Procedure 11(c), which governs sanctions for representations to a Court made in violation of Rule 11(b), it is unresolved in the Second Circuit whether such sanctions are non-dispositive, so as to make a magistrate judge's sanctions order subject to clear error review, or dispositive, such that the order would take the form of a report and recommendation. *See Kiobel v. Millson*, 592 F.3d 78, 84–107 (2d Cir. 2010) (concurring opinions of Cabranes, Leval, and Jacobs, JJ.). It similarly appears an open question in this Circuit whether sanctions issued by a magistrate judge pursuant to the court's inherent powers are dispositive or nondispositive.

Here, Judge Peck did not identify the source of authority for the sanctions imposed on Lin and Stoltz. But a review of the potential sources suggests that these were necessarily imposed pursuant to a federal court's inherent authority "to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Rule 37 is inapplicable, because the sanctioned conduct did not relate to the discovery process. Rule 11(c) is also inapplicable: To the extent Lin and Stoltz were sanctioned for Lin's tardy

arrival, Rule 11(c) did not afford a basis for that sanction; and to the extent the sanction was based on Stoltz's failure to notify the Court earlier of Lin's new settlement demand, that conduct did not clearly violate Rule 11(b),[5] and there was no finding—or basis for a finding—that Stoltz made that demand (or delayed giving notice of it) to cause unnecessary delay or for an improper purpose so as to justify Rule 11(c) sanctions. *See Sanko S.S. Co., Ltd. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987) ("Before awarding sanctions under Rule 11, a court ought to set forth its reasons or findings as to why a pleading, motion or other paper is frivolous."). On the contrary, Judge Peck stated that Stoltz's failure to update the court of his client's increased settlement demand "may be an innocent mistake." Tr. 7.

The Court need not resolve here whether sanctions imposed by a magistrate judge under the court's inherent authority are dispositive or non-dispositive.[6] That is because, for the reasons that follow, the Court finds that the sanctions imposed must be vacated, whether reviewed *de novo* or for clear error.

---

[5] The Court is unaware of any authority reading Rule 11 to require a party, prior to a settlement conference, to modify or withdraw a submission containing a stale settlement demand. Indeed, "Rule 11 does not impose a continuing obligation on the signer to correct or withdraw papers previously filed." *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1470 (2d Cir. 1988) (*rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989)) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir. 1988)).

[6] A final potential source of authority is 28 U.S.C. § 1927, which authorizes sanctions against attorneys—but not parties—based on a similar showing of bad faith as that required to invoke a court's inherent power. *Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 143–44 (2d. Cir. 2012). Because Judge Peck imposed the sanctions jointly on party Lin and attorney Stoltz, the Court infers that the sanctions here were imposed pursuant to the inherent power, which, unlike a court's power under § 1927, can reach parties as well as attorneys. In any event, even if the sanctions on attorney Stoltz were imposed pursuant § 1927, the same standard would apply as under the court's inherent power.

### B.      Were the Sanctions Justified Under the Court's Inherent Power?

A court's inherent power to sanction improper conduct "stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (citing *Chambers*, 501 U.S. at 43) (quotation omitted).  "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44 (citation omitted).

Relevant here, a particularized showing of bad faith is always required to justify the use of a court's inherent power. *Teamsters*, 948 F.2d at 1345. "An award of sanctions under the court's inherent power requires both 'clear evidence that the challenged actions are *entirely without color*, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity of factual findings of [the] lower courts." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Oliveri*, 803 F.2d at 1272) (emphasis and alterations in *Revson*).[7]

The facts do not support this showing here, as to either lapse cited by Judge Peck.

As to Lin's lateness to the conference, the source of the $250 sanction, it undeniably wasted the Court's time—along with that of defense counsel and Lin's own attorney, Stoltz.  But there is no basis for inferring that Lin acted out of bad faith, and Judge Peck did not so find. Rather, Stoltz credibly, and without factual refutation, represented that Lin—a speaker of marginal English who was coming to the courthouse for the first time—simply got lost en route. *Id.* at 8–9.

---

[7] Applied to a party's legal argument, "[a] claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Revson*, 221 F.3d at 78–79 (citation and quotation marks omitted).

9

As to Stoltz's failure to give advance notice of Lin's heightened settlement demand, the source of the $1,000 sanction, that action was indeed thoughtless and disrespectful of the busy schedules of the conference participants.  As Judge Peck rightly noted, had he and Corporation Counsel learned in advance of the conference that Lin was now, absurdly, insisting on a settlement of at least $600,000—10 times her earlier written demand of $60,000—the conference almost certainly would have been cancelled as futile.  But the record does not permit a finding that Stoltz's inaction, though inconsiderate, was a product of bad faith or undertaken for oppressive or improper strategic reasons.  On the record at hand, his failure to give the Court and the defense advance notice of Lin's heightened settlement demand is more aptly cast as unthinking.  And as to this conduct, too, Judge Peck did not made the required particularized showing of bad faith.  For these reasons, the Court is obliged to vacate the sanctions order.

In so holding, the Court notes that, although monetary sanctions ill fit the circumstances, Judge Peck's verbal condemnation of Stoltz and the Wang Law Office was spot on the mark.  As Judge Peck noted, Stoltz's failure to alert the Court and his adversary to circumstances that made the upcoming conference a sure waste of time was thoughtless and unprofessional.  A scheduled settlement conference with a magistrate judge gives the parties and counsel a golden opportunity to come together, guided by an experienced and neutral jurist, to achieve a fair and expeditious resolution of their dispute.  The magistrate judge, no less than the parties, prepares for such a conference, and clears his or her busy schedule for it.  Counsel are reasonably expected to come to such conferences prepared to negotiate in good faith.  They are also reasonably expected to alert the Court and their adversaries to circumstances that would make a scheduled conference futile.  And where a magistrate judge has earlier solicited and received written statements from each party as to its settlement parameters, prompt notice of a material change in position—here,

a tenfold increase to an objectively unreasonable floor demand—is particularly in order. Judge Peck was rightly dismayed by counsel's disrespect for the settlement process and its participants and rightly made his displeasure known. The Court expects Stoltz and the Wang Law Firm, in future appearances in this District, to aspire to a higher level of professionalism.

## CONCLUSION

For the foregoing reasons, the Court vacates the sanctions imposed by Judge Peck. The Clerk of Court is directed to return $1,000, and the New York City Law Department is directed to return $250, to plaintiff's counsel. These payments are to be made by Friday, December 9, 2016. As to next steps in this case, a decision resolving the pending motion for summary judgment will issue shortly.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 28, 2016
       New York, New York